UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RANDY P. STOUT, a married person in his separate estate, | NO: 10-CV-3080-TOR |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| v. | |
| YAKIMA HMA, INC., a Washington corporation; individually and doing business as YAKIMA REGIONAL MEDICAL AND CARDIAC CENTER; ANGELA BEAUDRY, and JOHN DOE BEAUDRY, husband and wife; and CORRINE MURPHY-HINES and JOHN DOE HINES, husband and wife, | |
| Defendants. | |

BEFORE THE COURT is Defendants' Motion for Summary Judgment

(ECF No. 85) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 91).

Also before the Court is Plaintiff's Motion in Limine (ECF No. 124), and

Plaintiff's Motion to Strike Portions of the Declaration of Justin Dolan (ECF No.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1

136).  These matters were heard with oral argument on February 12, 2013.

Christopher M. Constantine, Kenyon E. Luce, and Elizabeth Thompson appeared

on behalf of the Plaintiff.  Paula L. Lehmann appeared on behalf of Defendant.

The Court has reviewed the relevant pleadings and supporting materials, received

the benefit of oral argument, and is fully informed.

BACKGROUND

On September 17, 2010, Plaintiff Randy P. Stout ("Stout") filed his

Complaint alleging claims of ERISA violations, age discrimination in violation of

the Washington Law against Discrimination ("WLAD"), outrage, and defamation.

ECF No. 1.  Defendants Yakima HMA Inc. ("Yakima Regional"), Angela

Beaudry, and Corrine Murphy-Hines (together "Defendants") successfully moved

to dismiss the ERISA claim.[1]  ECF No. 41.  Subsequently, Stout gave notice that

---

[1] When a federal court has original jurisdiction over a claim, the court may

exercise supplemental jurisdiction over state law claims that "form part of the same

case or controversy under Article III …." 28 U.S.C. § 1367(a).  However, the court

*may* decline jurisdiction if the district court has dismissed claims over which it had

original jurisdiction.  28 U.S.C. § 1367(c)(3).  Despite the dismissal of the ERISA

claim, the Court accepts supplemental jurisdiction over Stout's state law claims.  It

is in the interest of "economy, convenience, fairness and comity" for Stout's state

claims to remain in this Court.  *See Executive Software v. United States District*

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 2

only the age discrimination claim would be adjudicated at trial, abandoning his claims of outrage and defamation.  ECF No. 79.  Presently before the Court is Defendants' Motion for Summary Judgment and Plaintiff's Cross-Motion for Partial Summary Judgment.  ECF No. 85, 91.

## FACTS

Yakima Regional is a medical center in Central Washington that is staffed by approximately 750 employees.[2]  Stout was employed at Yakima Regional from November 10, 1980 until he was terminated on November 18, 2008.  At the date of his termination, Stout was the assistant director of respiratory care.  He was 52 years old.  It is undisputed that while employed at Yakima Regional, Stout did satisfactory work and received favorable performance reviews, increased responsibilities, promotions, consistent raises, and bonuses.  In accordance with

---

*Court*, 24 F.3d 1545, 1556 (9th Cir. 1994) *overruled on other grounds by California Dept. of Water Resources v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).

[2] Except when otherwise noted, these facts are taken from the parties' Joint Statement of Uncontroverted Facts Regarding Plaintiff's Motion for Summary Judgment (Noted for February 12, 2013) and Defendant's Motion for Summary Judgment (Noted for February 12, 2013).  *See* ECF No. 158.

this satisfactory performance, in March 2008 Defendant Corrine Murphy-Hines ("Murphy-Hines") appointed Stout to Interim Director of respiratory care at Yakima Regional, and complemented him on stepping up in a time of need after the previous director departed.  Later in 2008 Stout decided he did not want to be the director of respiratory care, and became assistant director after the hospital hired Brian Weihs ("Weihs") as lead director.  Weihs was 40 years old at the time. Stout's job description as assistant director included control over scheduling and assisting in evaluation of new hires after 90 days of employment.

On or about October 28, 2008, Shirley Payne ("Payne") began work as a staff respiratory therapist at Yakima Regional.  Payne was 51 years old at the time. On Saturday November 8, 2008, Stout called the hospital for Payne's personal phone number.  Stout called Payne at home and asked her to shoot pool with him that evening.  Payne testified that she believed the invitation was to a group function, so she accepted the invitation.  ECF No. 88-1, Ex. 6 at 107-108. However, it turned out to be only Stout and Payne.  The events of that night and the next few days culminated in Payne's complaint to Yakima Regional about Stout's alleged conduct.

That night, Stout picked Payne up and they went to a bar to play pool, during which Stout paid for Payne's drinks.  Upon leaving the bar, Stout's estranged wife, Cindy Stout ("Cindy"), began following them.  Stout and his wife were still

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4

married but were separated as of October 8, 2008.  Stout testified that he believed his wife had "mental issues" and feared she might physically attack him which she had done in the past.  ECF No. 88-1, Ex. 3 at 59.  Stout informed Payne that his wife was following them but did not share his concerns for his own safety.  Cindy pulled in behind Stout's vehicle, approached the passenger side, introduced herself as Stout's wife, and asked if Payne knew that Stout was married.  Stout invited Cindy into the restaurant and purchased wine for everyone.  Payne recalled that Cindy made inappropriate comments to her during the time at the restaurant.  The three of them went back to the first bar to pick up Stout's glasses, at which point Stout and Cindy danced with each other and eventually decided to go home together.  Cindy left her car at Payne's house overnight, and Stout and Cindy returned the following day to pick up the car.  The following Monday, Stout called Payne and asked if she needed more hours.  Payne reported that later that night Cindy called her and made disturbing remarks.

On November 11, 2008 Payne complained to Weihs, the director of respiratory care, about the events that transpired on November 8, 2008.  Weihs took Payne to Human Resources, whereupon she was interviewed by Defendant Angela Beaudry ("Beaudry"), and Payne related the events of that night.  Beaudry called Stout and informed him there was a complaint against him and he was suspended until further notice.  Beaudry and Murphy-Hines then began an

1    investigation of the complaint, including interviewing Payne and Stout, and asking

2    Payne to prepare a written summary of her complaint.  At some point after that

3    phone call, Beaudry and Murphy-Hines interviewed Stout for approximately an

4    hour and asked for his explanation of what transpired that night.  Stout's

5    explanation was consistent with his deposition testimony taken later.  ECF No. 88-

6    1, Ex. 3 at 53-62, 67.  Beaudry and Murphy-Hines informed Stout that the

7    circumstances were serious and termination was "highly possible."

8        On November 18, 2008 Beaudry asked Stout to come back in for further

9    discussion, but Stout declined to go back to Yakima Regional and stated that if he

10   was going to be terminated it should be done over the phone.  *Id*. at 68-69.  At that

11   time, Beaudry informed Stout that he was being terminated for inappropriate

12   conduct.  Three days later Stout's termination was officially recorded, however,

13   there is no document outlining the reason for Stout's termination.  Beaudry and

14   Murphy-Hines testified that Stout was terminated for acting inappropriately with a

15   subordinate, exercising poor judgment with a subordinate, and placing a

16   subordinate in an inappropriate position.  ECF No. 88-1at Ex. 1 at 15, Ex. 2 at 33.

17       After Stout's termination, the position of assistant director was not filled for

18   eight months.  Weihs testified that some of Stout's respiratory therapy duties were

19   taken over by Weihs and his staff after Stout was terminated.  ECF No. 88-1, Ex. 4

20   at 90.  In mid-2009, Yakima Regional decided it once again needed an assistant

director of respiratory care and interviewed applicants for the position.  In July of

2009 Kim Stracke ("Stracke") was hired as assistant director.  Stracke is in her

thirties.  However, Yakima Regional eventually eliminated the position of assistant

director entirely, and Stracke now works for another hospital.  Stout filed the

instant lawsuit on September 17, 2010.

DISCUSSION

**I.    Plaintiff's Motion to Strike Portions of the Declaration of Justin Dolan**

When ruling on a motion for summary judgment, a court may only consider

evidence that would be admissible under the Federal Rules of Evidence.  *See* Fed.

R. Civ. P. 56(c), (e).  Stout argues that Exhibit 7 (an email exchange between

Weihs and Payne) and Exhibit 8 (a chronology of events on the night in question

prepared by Payne) to the Dolan Declaration are inadmissible for a myriad of

reasons.  *See* Dolan Decl., ECF No. 88-1.  However, the Court does not rely on

any of this evidence for the substance of its ruling on summary judgment.  Rather,

the Court relies entirely on undisputed facts and deposition testimony from the

relevant parties.  Thus, Stout's motion to strike these exhibits is essentially moot.

**II. Motions for Summary Judgment**

**A. Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant

summary judgment in favor of a moving party who demonstrates "that there is no

genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" within the meaning of this rule if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A "genuine dispute" over any such fact exists only where there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party. *Id.* at 248.

The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party has the burden of proof at trial, the moving party need only demonstrate an absence of evidence to support the non-moving party's claims. *Id.* at 325. The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. In deciding whether this standard has been satisfied, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## B. Age Discrimination under the WLAD

Washington courts use a burden shifting analysis in cases alleging employment discrimination under the WLAD when the plaintiff lacks direct evidence of discriminatory animus. *Domingo v. Boeing Employees' Credit Union*,

124 Wash. App. 71, 77 (Ct. App. 2004) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

> Under this framework, the plaintiff has the initial burden of proving a prima facie case. Once the plaintiff establishes a prima facie case, an inference of discrimination arises. In order to rebut this inference, the defendant must present evidence that the plaintiff was terminated for a legitimate reason. The plaintiff must then show that the proffered reason is a pretext for discrimination. The plaintiff has the final burden of persuading the trier of fact that discrimination was a substantial factor in the termination decision.

*Id.* (internal citations omitted). Therefore, summary judgment is proper if (1) the plaintiff cannot provide specific and material facts supporting every element of the prima facie case, (2) plaintiff cannot provide evidence that the defendant's actions were pretextual, or (3) if no rational trier of fact could conclude that the action was discriminatory. *Id*. The Court will apply the foregoing analysis to Stout's age discrimination claim. The cross motions for summary judgment are based almost entirely on the same issues of law and fact, thus, the Court will consider them simultaneously.

## 1.  Prima Facie Case

The WLAD protects employees age 40 and over from discrimination on the basis of age. RCW 49.44.090(1). To establish a prima facie case of age discrimination, an employee must show that: (1) he was within the statutorily protected age group; (2) was discharged; (3) was doing satisfactory work; and (4) was replaced by a significantly younger person. *Hill v. BCTI Income Fund-I*, 144

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 9

Wash.2d 172, 188 (2001), *overruled on unrelated grounds by McClarty v. Totem*
*Elec.*, 157 Wash.2d 214 (2006).  At the summary judgment stage a plaintiff's
prima facie burden is minimal and "does not even rise to the level of a
preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th
Cir. 1994).  Neither party disputes that the first three elements are satisfied in this
case.  Thus the only issue remaining for the Court to consider is whether Stout was
replaced by a significantly younger person.

First, the Court will address Stout's argument that he is entitled to summary
judgment on the prima facie case because of two alleged "admissions" by
Defendants regarding the fourth element.  *See Am. Title Ins. Co. v. Lacelaw Corp.*,
861 F.2d 224, 226 (9th Cir. 1988)("Judicial admissions are formal admissions in
the pleadings which have the effect of withdrawing a fact from issue and
dispensing wholly with the need for proof of the fact.").  In Defendants' Answer,
they "admit" that the employee hired to replace Stout was younger than Stout.  *See*
ECF No. 61 at ¶ 3.7.  However, Defendants denied that this employee was "much
younger" than Stout.  *Id*. at ¶ 4.5.  Additionally, in response to Stout's
Interrogatory No. 10 asking Defendants to identify the person who was hired to
replace Stout including the person's age, Defendants responded that Stracke was
hired and she was approximately 33 years old.  Because Stout was 52 years old at the
time of his termination, and was replaced by a 33 year old, Stout argues that he

1  established the fourth element of the prima facie case as a matter of law.  ECF No.

2  81 at 7.  The Court declines to grant summary judgment on the fourth element as a

3  matter of law solely based on these alleged "admissions."  The record does not

4  reflect any "admission" by Defendants that Stout was replaced by a "significantly

5  younger person" or that Defendants conceded that Stout has satisfied the fourth

6  element of the prima facie case.  For this reason, in addition to those detailed

7  below, the Court denies Stout's motion for summary judgment on the prima facie

8  case.

9        Defendants argue they are entitled to summary judgment because Stout does

10  not establish the fourth element of his prima facie case for two primary reasons.

11  First, Defendants contend that in order to prevail on his claim, Stout must present

12  evidence that Yakima Regional "sought a replacement with qualifications similar

13  to his own, thus demonstrating a continued need for the same services and skills."

14  *Grimwood v. Univ. of Puget Sound*, 110 Wash.2d 355, 363 (1988)(*quoting Loeb v.*

15  *Textron, Inc.*, 600 F.2d 1003, 1013 (1st Cir. 1979)).  Defendants argue that Stout's

16  eventual replacement, Stracke, was more qualified than Stout because she was

17  pursuing a master's degree while he only had a one year degree, and she was

18  already "registered" instead of merely "certified" in respiratory care.

19        Stout responds that Defendants improperly rely on the federal standard for

20  ADEA claims requiring that a plaintiff's replacement have "equal or inferior

qualifications," which he contends is not followed by Washington courts when analyzing WLAD claims. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000)(plaintiff must demonstrate that he was "replaced by substantially younger employees with equal or inferior qualifications."). Rather, according to Stout, Washington law only requires him to prove that he was replaced by a significantly younger employee. *See e.g., Hill*, 144 Wash.2d at 188. Stout relies on several Washington cases in support of his argument that the Court should follow this "formulation" of the fourth element. However, after reviewing the cases, the Court finds that none of them provide any analysis of their respective prima facie cases on this precise issue, much less affirmatively support a finding that the fourth element under the WLAD imposes a different standard than the requirement under federal law. *Wilson v. Battelle Mem'l Institute*, No. 11-CV-5130-TOR, 2012 WL 4514510 at *6-7 (E.D. Wash. Oct. 1, 2012)(analyzing fourth element in situation analogous to reduction in force); *Griffith v. Schnitzer Steel Industries, Inc.*, 128 Wash. App. 438, 449 (Ct. App. 2005)("[f]or the purposes of this appeal, we assume that [plaintiff] presented a prima facie case of age … discrimination."); *Hill*, 144 Wash.2d at 188 (conceding successful prima facie case); *Becker v. Wash. State Univ.*, 165 Wash. App. 235, 252-254 (upholding dismissal without addressing merits of prima facie case).

1    Washington courts have consistently found that federal law is instructive

2    with regard to construing and applying state discrimination laws that have the same

3    purpose as their federal counterparts.  *See e.g., Clarke v. Shoreline School Dist.*

4    *No. 412, King County*, 106 Wash.2d 102, 118 (1986).  Moreover, courts have

5    utilized the same standard for the fourth element of a prima facie case of age

6    discrimination when analyzing the same claim under both the ADEA and the

7    WLAD.  *See e.g., Ferguson v. Wal-Mart Stores, Inc.*, 114 F. Supp. 2d 1057, 1063

8    (E.D. Wash. 2000)(requiring plaintiff to establish that she "was replaced by a

9    sufficiently younger employee with equal or inferior qualifications.").  Thus, the

10   Court declines to find as a matter of law that in WLAD cases, as opposed to ADEA

11   cases, a plaintiff is only required to prove that he or she was replaced by a

12   significantly younger employee.  That said, the Court agrees with Stout that the

13   record is not sufficient to grant summary judgment in favor of Defendants on this

14   element of the prima facie case.  ECF No. 140 at 7.  While Stracke may have

15   achieved a higher level of education and certification than Stout, Stout argues that

16   Stracke had minimal supervisory experience in a hospital, and was not able to

17   perform any of the diagnostic testing that Stout performed.  *Id*. at 5-6.  The Court

18   finds that a triable issue fact remains as to whether Stout was replaced by a

19   sufficiently younger employee with equal or inferior qualifications.

20

Second, Defendants argue that Yakima Regional eliminated Stout's former position of assistant director of respiratory care for eight months, during which time other employees assumed some of Stout's former duties. [3] ECF No. 86 at 14. Defendants are correct that "[a] showing that some of the discharged employee's duties were assumed by existing employees is by itself not sufficient to establish a discrimination claim." *Cluff v. CMX Corp. Inc.*, 84 Wash. App. 634, 637 (Ct. App. 1997). However, as subsequently noted in *Cluff*, the elements of the prima facie case are not rigid. *See id.* at 638; *see also Grimwood*, 110 Wash.2d at 362 ("[w]e note that these four factors are not absolutes"). Failure to prove replacement by a substantially younger person is "not necessarily fatal" to an age discrimination claim when the employee's discharge is due to a general reduction in the work force. *See Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir. 1990). For example, in a reduction in workforce situation, proof of replacement can be

_____

[3] In their response to Plaintiff's motion for summary judgment, Defendants also argue that as part of the fourth element of the prima facie case, Stout must show "that the position remained open…." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993). However, Weihs testified that the position of assistant director was "left open" until it was eventually filled. ECF No. 83, Ex. 13A at 40. Thus, the Court finds this particular argument by Defendants unpersuasive in the context of Stout's age discrimination claim under the WLAD.

satisfied by showing a continuing need for plaintiff's services in that his job duties were still being performed. *See id.*; *see also Grimwood*, 110 Wash.2d at 363 (*quoting Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 (1st Cir. 1979)). Stout argues that the eventual hiring of Stracke as assistant director of respiratory therapy, together with the fact that Stout's duties were taken over by Weihs and his staff after Stout's termination, demonstrate that Yakima Regional still had need of Stout's services after his termination. ECF No. 81 at 9.

The Court finds insufficient evidence in the record to find as a matter of law that this case is analogous to a reduction in workforce case based solely on the indication that some of Stout's duties as a respiratory therapist, *not* his duties as assistant director of respiratory care, were taken over by other employees. Genuine issues of fact remain as what proportion of Stout's duties, both as a respiratory therapist and as assistant director, were taken over by other employees. Thus, in light of the abovementioned findings, the Court finds genuine issues of fact exist as to whether Plaintiff has established the fourth element necessary to prove a prima facie case of age discrimination. Nonetheless, the Court will proceed to consider the subsequent components of burden shifting analysis, as Stout's failure to establish pretext is ultimately dispositive in this case.

## 2.  Legitimate Non-Discriminatory Reasons

1        The burden now shifts to Defendants to rebut the inference of discrimination

2  and present evidence that Stout was terminated for a legitimate nondiscriminatory

3  reason. *See Domingo*, 124 Wash. App. at 77; *see also Grimwood*, 110 Wash.2d at

4  364 ("[t]he employer's burden at this stage is not one of persuasion, but rather of

5  production" and it "need only articulate reasons sufficient to meet the prima facie

6  case."). Defendants argue that Yakima Regional meets this burden because Stout

7  admits to many of the events Payne complained about, including: obtaining a

8  subordinate's personal phone number, asking her to go out with him alone on a

9  Saturday night, taking her to a bar and buying her alcohol (which he had never

10  before done with a subordinate), being followed by his estranged wife who he

11  admits to fearing may physically harm him, allowing his estranged wife to join

12  them, drinking and dancing with Payne and his wife, and leaving his wife's car at

13  his subordinate's house and picking it up the next day. Stout also admits to calling

14  the subordinate the following Monday and asking if she had enough hours.[4]

15  Finally, Defendants contend that Stout admitted it would be inappropriate for a

16  supervisor to engage in conduct similar to his. ECF No. 154 at 5, n.1 (citing ECF

17  No. 88-1 at 41). Based on these largely undisputed facts, Defendants argue that

18  Stout was terminated for the legitimate non-discriminatory reason that he

---

19  [4] The Court notes that Stout claims the reason for this call was only to inquire

20  about whether Payne had enough hours of work during her orientation period.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 16

demonstrated poor leadership, made serious errors in judgment, and acted inappropriately toward a subordinate.

Stout responds that triable issues of fact remain as to whether the reasons for discharging Stout were legitimate and nondiscriminatory.[5]  However, in his responsive briefing, Stout limits his challenge to Defendants' assertion that he admitted his conduct was inappropriate.  According to Stout, he only admitted that "hypothetical" conduct of a supervisor would be inappropriate, however, he also testified that he did not believe his conduct during the events at issue was inappropriate.  ECF No. 141, Ex. 1 at 65:18-66:2.  The Court finds that whether or not Stout himself admitted that his conduct was inappropriate is not determinative of this issue.  *See Griffith*, 128 Wash. App. at 447 ("employee's subjective beliefs and assessments as to his performance are irrelevant.").

Under Washington's common law at-will employment doctrine, an employer may discharge an employee "for no cause, good cause or even cause morally wrong without fear of liability."  *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 226 (1984).  It is clear from the record that Stout was terminated for inappropriate behavior including accessing personal contact information not for legitimate employment reasons, and the unseemly appearance that his offer to give

---

[5] Stout does not seek summary judgment on this component of the burden shifting framework.  See ECF No. 81.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 17

Payne more hours after the evening in question was quid pro quo for spending time with him outside of work.  Regardless of any disagreement over the precise nature of the events that took place that evening and the following Monday, the undisputed facts show that the reason for Stout's termination was his inappropriate behavior toward a subordinate.  For the purposes of the burden shifting analysis, the Court finds Defendants have satisfied their burden to rebut any inference of discrimination by showing legitimate non-discriminatory reasons for Stout's termination.

### 3. Pretext

An employee can show that an employer's stated reasons for termination are pretextual and unworthy of belief "with evidence that (1) the employer's reasons have no basis in fact; or (2) even if the reasons are based on fact, the employer was not motivated by the reasons; or (3) the reasons are insufficient to motivate an adverse employment decision."  *Chen v. State*, 86 Wash. App. 183, 190 (Ct. App. 1997).  Pretext may also be demonstrated by evidence showing that an employee was treated differently than similarly situated employees outside the protected class. *Domingo*, 124 Wash. App. at 88.  Circumstantial or inferential evidence may be sufficient to establish pretextual motive, however, an employee's subjective belief about his performance is not relevant.  *Hill v. BCTI Income Fund-I*, 144 Wash.2d 172 at 190 n.14 ("courts must not be used as a forum for appealing lawful

employment decisions simply because employees disagree with them."); *see also*

*Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1038 (9th Cir. 2005)

(circumstantial evidence must be both specific and substantial).  If there is no

evidence of pretext the defendant is entitled to dismissal as a matter of law, but if

there is evidence of pretext than the case must go to the jury.  *See Kastanis v.*

*Educational Employees Credit Union*, 122 Wash.2d 483, 491 (1993).

        "When an employee is both promoted and fired by the same decisionmakers

within a relatively short period of time, there is a strong inference that he or she

was not fired due to any attribute the decisionmakers were aware of at the time of

the promotion."  *Griffith*, 128 Wash. App. at 453 (Ct. App. 2005).  Rather, in order

to prevail in these circumstances, an employee must answer the following

"obvious" question: "if the employer is opposed to employing persons with a

certain attribute, why would the employer have hired [promoted] such a person in

the first place."  *Id*.  The same actor inference is strong and can only be defeated by

an "extraordinarily strong showing of discrimination."  *Coghlan v. American*

*Seafoods Co., LLC*, 413 F.3d 1090, 1097 (9th Cir. 2005) ("rarely" is a plaintiff's

evidence sufficient to overcome the same actor inference).

        Defendants argue that the same actor inference is applicable in this case

because Murphy-Hines promoted Stout to interim director of respiratory care only

eight months before she participated in the decision to terminate Stout's

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 19

employment.[6]  ECF No. 158 at ¶¶ 9-11.  Further, Murphy-Hines was 57 years old at the time of Stout's termination, and her membership in the protected class strengthens the same actor inference.  *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996) *abrogated in part on other grounds in Russell v. McKinney Hospital Venture*, 235 F.3d 219 (5th Cir. 2000)("[t]he fact that the actor involved in both employment decisions is also a member of the protected class only enhances the inference.").

        Stout fails to offer any answer to why Murphy-Hines would have promoted him if she was so opposed to people above a certain age.  *See Hill*, 144 Wash.2d at 189-90.  Nor does Stout make any argument that the same actor inference does not apply, or dispute that the inference is particularly strong in light of the short eight month period between the promotion and the termination, and the fact that Murphy-Hines was in the same protected class as Stout.  *See id*.; *see also Griffith*, 128 Wash. App. at 454-55 (noting short period of time is not an essential element of the same actor inference, but a shorter time period affects the strength of the inference).  Instead, Stout cites to a previous unpublished decision by this Court denying summary judgment to the employer due to competing inferences of discriminatory intent presented by the plaintiff's evidence in that case.  *See Wilson*,

---

[6] It is undisputed that Stout voluntarily decided not to become permanent director of respiratory care.  ECF No. 158 at ¶ 11.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 20

2012 WL 4514510 at *11.  Stout offers three "sources" for competing inferences

of discriminatory intent in his attempt to rebut the strong same actor inference in

the instant case and establish that the stated reasons were pretextual.[7]

First, Stout argues that evidence establishing his prima facie case may be

considered to demonstrate that Defendants' explanation for Stout's termination

was pretextual.   However, the Court finds that Stout's reliance on his prima facie

case to rebut Stout's explanation for his termination is of minimal assistance in

overcoming the same actor inference.  Washington case law explicitly states that a

plaintiff "cannot rely on simply presenting a prima facie case of discrimination and

rebutting the justifications proffered for his termination."  *Griffith*, 128 Wash. App.

at 454.  Moreover, as indicated above, the Court denied Stout's motion for

summary judgment on the prima facie case.  Stout's next argument fairs no better.

Second, Stout contends that evidence of pretext is established because

Defendants treated younger but otherwise similarly situated employees more

favorably than Stout.  *See Domingo*, 124 Wash. App. at 88.  According to Stout,

his replacement Stracke was a similarly situated employee because both were

---

[7] These three contentions are exactly the same arguments advanced by Plaintiff in

support of his motion for partial summary judgment on the pretext component of

the burden shifting analysis.  See ECF No. 81.  Thus, the Court will consider both

motions simultaneously.

1    respiratory therapists, both held the position of assistant director, and both had the

2    same supervisor Brian Weihs.  ECF No. 140 at 11.  Additionally, Stout presents

3    evidence that Weihs and Stracke "routinely" engaged in social contact outside of

4    work, including drinking alcohol, but neither employee was disciplined as a result

5    of their social contact outside of work.[8]  Last, Stout argues that Payne engaged in

6    the same allegedly inappropriate behavior as Stout, but Payne received no

7    discipline.  Thus, Stout contends that the more favorable treatment of similarly

8    situated employees Weihs, Stracke, and Payne, establishes that Defendants'

9    explanation for Stout's termination was pretextual.

10           Defendants respond that Stracke and Weihs engaged in behavior that was

11   not substantially similar to Stout's conduct.  Moreover, these two individuals could

12   not have been treated more favorably than Stout, because there is no evidence that

13   Stracke or Weihs complained about each other's conduct, nor were any supervisors

14   aware of social interaction between Stracke and Weihs.  Last, Defendants argue

15   that Payne and Stout were not similarly situated because Payne was in the

16

17   [8] It is undisputed that Stracke was friends with Weihs' wife and that the three of

18   them interacted socially in a group setting.  See ECF No. 88-1, Ex. 4 at 93.

19   However, there is no evidence that either party acted inappropriately toward the

20   other or filed any complaint alleging misconduct during these social interactions.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 22

protected class, she did not have the same job as Stout because he was

management, and they did not engage in similar misconduct.

Employees are "similarly situated when they have similar jobs and display

similar conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir.

2003); *see also Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1113-15 (9th

Cir. 2011)("employees need not be identical, but must be similar in material

respects.").  The Court finds it unnecessary to conduct a lengthy investigation of

whether the alleged comparators had similar jobs as Stout,[9] because the Court finds

absolutely no evidence that Stout displayed similar conduct as Weihs, Stracke, or

Payne.  Regardless of Stout's attempts to characterize his termination as based on

casual socialization with Payne, the record clearly indicates that he was terminated

because he had supervisory authority over Payne and behaved inappropriately

toward a *subordinate*.   See ECF No. 154 at 12-13.  However, Stout offers no

evidence that Weihs, Stracke, or Payne displayed behavior that was similar Stout's

---

[9] "Employees in supervisory positions are generally deemed not to be similarly

situated to lower level employees." *Vasquez v. County of Los Angeles*, 349 F.3d

634, 641 (9th Cir. 2003).  Thus, according to Defendants, Stracke and Stout are not

similarly situated because Stracke was Weihs' subordinate and was not acting in a

supervisory capacity.  ECF No. 154 at 15.  Similarly, Payne was a subordinate and

therefore she did not have a similar job to Stout who was a supervisor.

1    in this material respect.  *See Earl*, 658 F.3d at 1115.  Moreover, as a matter of

2    common sense, the Court finds it would be impossible for the alleged

3    discriminators (Murphy-Hines and Beaudry) to treat Weihs or Stracke more

4    favorably than Stout if they were unaware of any alleged misconduct.  *See e.g.,*

5    *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 64-65 (2nd Cir.

6    1997)(finding it "impossible" to establish that similarly situated comparators were

7    treated differently when there was no evidence that defendant knew about any

8    other violations of a "no fraternization" rule).  For all of these reasons, the Court

9    finds no genuine issue of material fact exists as to whether any similarly situated

10   employees outside the protected class were treated more favorable than Stout.

11        Last, Stout argues that pretext may be established through evidence that

12   Defendants' deviation from established policy worked to Stout's disadvantage.

13   *See Earl*, 658 F.3d at 1117-18 (finding triable issue of pretext when employee

14   similarly situated to plaintiff, who demonstrated "extremely serious performance

15   issues," received a more lenient disciplinary process).  Pursuant to Yakima

16   Regional's disciplinary policy entitled "6-1 Disciplinary Action" ("Policy"), "[a]n

17   employee is discharged when all other efforts to help him/her to improve have

18   failed or when the employee is responsible for a very serious act or omission."

19   ECF No. 88-1, Ex. 10 at 122.  Further, "[d]isciplinary action is commensurate with

20   the seriousness of the conduct, progressive, and *may result in suspension or*

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 24

*discharge as the first step*." *Id.* (emphasis added). *Id.* The Policy outlines "Type C Offenses" that usually begin with a suspension or discharge, with the disclaimer that the listing is "intended to be representative of possible offenses and is not to be construed as a complete listing." *Id.* Stout argues Beaudry testified that Yakima Regional practiced progressive discipline as indicated in the Policy, but did not practice progressive discipline with regard to Stout's discharge. *See* 81-1 at Ex. 14 at 9-10. Stout also contends that neither Beaudry nor Murphy-Hines was able to identify a specific "Type C Offense" committed by Stout. *Id.* at 12; Ex. 15 at 10. Further, neither Beaudry nor Murphy-Hines could identify any written policy prohibiting social contact outside of work between employees. ECF No. 81-1, Ex. 14 at 17; Ex. 15 at 12.

The Court finds Stout's arguments unavailing. Although the Policy identifies that discipline is progressive, it also states that employees may be discharged at the first step. ECF No. 88-1, Ex. 10 at 122. Testimony by Murphy-Hines and Beaudry only confirms that progressive discipline is practiced "when appropriate" but the Policy reserves the right to skip to the most appropriate level. ECF No. 81-1, Ex. 14 at 9-10; Ex. 15 at 9. Moreover, while the Policy lists "Type C Offenses" that may qualify for immediate suspension or termination, they are "not to be construed as a complete listing." Again, this disclaimer leaves room for discretion in determining whether an offense may qualify for immediate

1    termination.  Last, Stout fails to identify a similarly situated employee at Yakima

2    Regional who received progressive discipline, as opposed to immediate

3    termination, for similar or more egregious conduct.  *See Earl*, 658 F.3d at 1117-18.

4    For all of these reasons, the Court finds no genuine issue of material fact exists as

5    to whether Murphy-Hines and Beaudry deviated from established policy to Stout's

6    disadvantage sufficient to establish pretext.  Rather, consistent with the discretion

7    provided for within the Policy, management determined that Stout's poor judgment

8    and inappropriate conduct required the highest level of discipline.

9        As a final matter the Court is compelled to distinguish its previous ruling in

10   *Wilson* from the facts presented in the instant case.  *See Wilson*, 2012 WL

11   4514510.  First, unlike *Wilson*, there is absolutely no evidence of any ageist

12   remarks or other arguably discriminatory behavior directed toward Stout or any

13   other staff member at Yakima Regional.   Second, four years passed between the

14   hiring and firing of the plaintiff in *Wilson*, which the Court found weakened the

15   same actor inference, as opposed to the short eight months between the favorable

16   action and the termination of Stout.  Unlike the plaintiff in *Wilson*, the Court finds

17   that Stout fails to identify sufficient evidence of a competing inference of

18   discrimination to overcome the strong same actor inference.

19       The Court is mindful that under Washington law, summary judgment in

20   favor of the employer is often inappropriate because evidence often "contain[s]

reasonable but competing inferences of both discrimination and nondiscrimination." *Kuyper v. State*, 79 Wash. App. 732, 739 (Ct. App. 1995). However, as indicated in detail above, Stout does not succeed in raising an inference that Defendants' stated reason for his termination was pretextual and unworthy of belief, particularly when considered as rebuttal to the compelling same actor inference established by Defendants.  In point of fact, the record is devoid of any inference that Stout's age was a factor in his termination.  *See Hill*, 144 Wash.2d at 190 ("[i]ndeed, the only age-related evidence in the record was the age of the persons involved.").  Stout presents no evidence that anyone at Yakima Regional made ageist comments or took any discriminatory actions toward Stout or any other worker in the protected class.  Even in the light most favorable to Stout, the Court finds that no reasonable jury could find in his favor on the WLAD age discrimination claim.  Thus, Defendant's motion for summary judgment on the age discrimination claim is granted and Stout's motion for partial summary judgment is denied.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment, ECF No. 85, is **GRANTED**.

2. Plaintiff's Motion for Partial Summary Judgment, ECF No. 91, is **DENIED**.

1      3.  Plaintiff's Motion to Strike Portions of the Declaration of Justin Dolan,

2          ECF No. 136, is **DENIED**.

3      4.  Plaintiff's Motion in Limine, ECF No. 124, is **DENIED** as moot.

4      The District Court Executive is hereby directed to enter this Order, provide

5 copies to counsel, enter judgment accordingly and CLOSE the file.

6      **DATED** this 14th day of February, 2013.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 28